AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
12935 Huber Road
Bentonville, AR 72713

Case No. 5:23cm0004-MEF

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Western___ District of ___Arkansas___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Controlled Substance Offenses |
| 21 U.S.C. 846 | Conspiracy |

The application is based on these facts:
See Attached Affidavit of DEA SA Michael Brooks

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*M. Brooks*
Applicant's signature

DEA SA Michael Brooks
Printed name and title

Sworn to before me and signed in my presence.

Date: 2/7/23

*Mark E. Ford*
Judge's signature

City and state: Fort Smith, Arkansas

Hon. Mark E. Ford, U.S. Magistrate Judge
Printed name and title

## ATTACHMENT A

## PREMISES TO BE SEARCHED

The residence located at 12935 Huber Road, Bentonville, Arkansas 72713, located in the Western District of Arkansas. The residence is described as a single-family trailer-style residence. The numbers "12935" are stickered to a black metal mailbox at the end of Target Residence #1's driveway, near Huber Road. The GPS coordinates for 12935 Huber Road are 36.3438029 Latitude and -94.3150363 Longitude.



## ATTACHMENT B

## ITEMS TO BE SEARCHED FOR

There is now being concealed certain property, namely evidence of violations of Title 21, United States Code, Section 841(a)(1)(distribution or possession with intent to distribute a controlled substance); and Title 21, United States Code, Section 846 (conspiracy to commit controlled substance offense). These offenses and proceeds earned from unlawful activities will be concealed or hidden to disguise the true nature, ownership, and control of the unlawful proceeds in furtherance of illegal activity including, but not by way of limitation, items of a nature hereinafter described as follows:

1. Controlled substances.

2. Equipment, books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances.

3. Addresses or telephone books and papers, and cellular phones and the contents thereof, reflecting names, addresses or telephone numbers.

4. Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders, bank checks, deposit checks, safe deposit keys, safe deposit records, credit account statements, applications for credit, credit transaction documents, loan and mortgage documents, records showing participation in partnership, ventures and corporations, records showing investments, titles and registrations for boats and

      automobiles and other items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money or assets in violation of 21 U.S.C. §§ 841(a)(1) and 846.

5. United States currency, precious metals, jewelry and financial instruments including, but not limited to stocks and bonds.

6. Photographs and video tapes, in particular, photographs and video tapes of co-conspirators, assets, firearms, and/or controlled substances.

7. Computers, computer records, computer disks, and other magnetic media, in particular, computer record/documentation evidencing the obtaining, secreting, transfer, concealment and/or expenditure of money, assets and controlled substances.

8. Firearms or weapons or any sort.

IN THE UNITED STATES DISTRICT COURT
Western District of Arkansas, Fayetteville Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE RESIDENCE LOCATED AT 12935 HUBER ROAD, BENTONVILLE, ARKANSAS 72713 | Case No. _____<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Mike Brooks, being first duly sworn, hereby depose and state as follows:

### PURPOSE OF AFFIDAVIT

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for the residence located at 12935 Huber Road, Bentonville, Arkansas 72713 (hereinafter, "Target Residence #1"), located in the Western District of Arkansas. Target Residence #1 is further described in Attachment A as a single-family trailer-style residence. The numbers "12935" are stickered to a black metal mailbox at the end of Target Residence #1's driveway, near Huber Road. Photographs of Target Residence #1 are attached to Attachment A.

2. For the reasons set forth below, your affiant has probable cause to believe that Target Residence #1 contains items that constitute evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1)(distribution of possession with intent to distribute a controlled substance); and Title 21, United States Code, Section 846 (conspiracy to commit controlled substance offense). Your affiant further submits that a search of Target Residence #1 will result in the discovery of items that constitute evidence, fruits, and instrumentalities of such activity.

3. Based upon your affiant's training, experience, shared experience with other agents and officers with whom he has worked, and participation in other investigations involving large

amounts of methamphetamine, cocaine, heroin, fentanyl, marijuana and/or other Controlled Substances, your affiant knows the following to be true:

   a.   That drug distributors often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by law enforcement authorities;

   b.   That even though these assets are in names other than the drug distributors', the drug distributors actually own and continue to use these assets, and exercise dominion and control over them;

   c.   That drug distributors often possess large amounts of United States currency in order to maintain and finance their on-going drug business;

   d.   That it is common for drug distributors to maintain books, records, receipts, notes, ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds, and other papers relating to the transportation, ordering, sale and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the traffickers have ready access to them;

   e.   That it is common for drug distributors to conceal contraband, proceeds of illegal drug sales, and records of drug transactions in secure locations within their residences, their businesses, their vehicles, and/or other locations which they maintain dominion and control over for ready access, and to conceal these items from law enforcement authorities;

   f.   That in-order-to accomplish this concealment, drug distributors frequently build "stash" places within their residences, vehicles, or businesses. There are a number of

publications available instructing where and how to build "stash" places. Copies of these types of publications have been found in the residences of drug distributors;

  g. That it is common for persons involved in drug distribution to maintain evidence pertaining to their obtaining, secreting, transfer, concealment, and/or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals, and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements, and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, and money wrappers. These items are maintained by the drug distributors within their residences, vehicles, businesses or other locations, which they maintain dominion and control over;

  h. That drug distributors often utilize electronic equipment such as cellular telephones, SIM cards, computers, flash drives, external hard drives, multimedia devices, telex machines, facsimile machines, currency counting machines, and telephone answering machines to generate, transfer, count, record and/or store the information described in items a, b, d, e, and g above, and q and r below;

  i. That when drug distributors amass large proceeds from the sale of drugs, the drug distributors may attempt to legitimize these profits through various money laundering methods. To accomplish these goals, drug distributors utilize, including but not limited to, domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations, business fronts, and otherwise legitimate businesses which generate large quantities of currency;

j.  That the sale of methamphetamine, cocaine, heroin, fentanyl, marijuana and other Controlled Dangerous Substances generates large quantities of United States currency in small denominations (commonly referred to as "street money");

k.  That it is common for drug distributors to physically handle and count the "street money" after receiving it in exchange for the Controlled Dangerous Substances, thereby leaving residue traces of Controlled Dangerous Substances on the "street money." Law enforcement agencies utilize dogs which are trained to react to the odor of Controlled Dangerous Substances and residue traces of Controlled Dangerous Substances; and that those trained dogs have reacted to narcotics tainted currency negotiated at banks and concealed in the residences of narcotics traffickers;

l.  That it is common for drug distributors to separate their "street money" by denomination and put this currency in rubber banded stacks in varying increments to facilitate quick counting;

m.  That it is recognized, and Courts have held, that the small and medium denominations of questionable currency, along with the manner in which the currency is handled, carried and concealed may establish probable cause that there is a substantial connection between the questionable currency and drug transactions, i.e. proceeds of illegal narcotic sales;

n.  That the Currency Transaction Report (CTR) (IRS Form 4789), which is required to be completed and filed with the IRS by all financial institutions on every currency transaction which exceeds $10,000, causes tremendous problems for drug distributors when they attempt to negotiate their illegal profits at financial institutions;

o.  That, in order to avoid the filing of a Currency Transaction Report, drug distributors often "structure" their currency transactions so that no one transaction exceeds $10,000, or they provide false or misleading information in an attempt to legitimize or conceal the source and/or ownership of the currency;

p.  That drug distributors at times become fearful that their extravagant spending habits will bring them under scrutiny by the Internal Revenue Service or other federal, state, or local agencies. In order to legitimize their spending, these distributors file tax returns reporting income commensurate with the amount of money they have spent during the year, which they feel, can be traced and documented by the government. The "source" of their income reported on these returns is usually falsely stated, misleading or generic in terms. Retained copies of these returns are commonly kept by the traffickers in their residences and businesses;

q.  That distributors of illegal drugs commonly maintain addresses or telephone numbers in books or papers ("ledgers") which reflect names, addresses and/or telephone numbers of their associates in the drug trafficking organization;

r.  That drug distributors take or cause to be taken photographs of themselves, their associates, their property and their product. That these distributors usually maintain these photographs in their possession, or in their residences and/or vehicles;

s.  That the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances;

t.  That drug distributors commonly have in their possession, that is, on their person, at their residences, in their vehicles, and/or their businesses, firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Said firearms are used to protect and secure a drug distributor's property. Such property may include, but is not limited to: illegal drugs, jewelry, vehicles, narcotics paraphernalia, books, records, and United States currency;

u.  That the target(s) of this investigation are engaged in long-term, continuing criminal activities, namely offenses involving the distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), conspiracy to commit the aforementioned crimes, in violation of Title 21, United States Code, Section 846; and Title 18, United States Code, Section 1956(a)(1) (Laundering of Monetary Instruments)

v.  That the evidence sought through the use of the search warrant listed herein will provide investigators with admissible evidence of these crimes needed to establish the full scope and nature of the offenses being investigated; including determining the identity of members of the organization, the sources of supply, transportation methods, locations used to conceal drugs and the assets purchased from the proceeds derived from the sale of drugs; and,

w.  That there is probable cause to believe that such items of evidence, which represent the fruits and instrumentalities of said offenses, will be located within the location specified in this application, which is located within the Western District of Arkansas.

4.   The information contained in this affidavit is based upon information provided by other DEA special agents/TFOs, other federal, state and local law enforcement officers, public source documents, and your affiant's own personal investigation. All the information provided by Confidential Sources (CS) has been corroborated by law enforcement during the course of the investigation through physical surveillance, the collection and analysis of evidence, and checks of various financial, property, and criminal databases.

5.   The information contained in this affidavit is submitted for the sole purpose of establishing probable cause for a certain search warrant mentioned herein. As a result, it does not contain every fact known to me concerning this investigation.

6.   Since this affidavit is for the limited purpose of establishing probable cause to support a search warrant, it contains only a summary of facts necessary to establish probable cause. Your affiant has not included each and every fact known to your affiant concerning the entities, individuals, and the events described in this affidavit.

7.   The grounds for issuance of the search warrant are derived from your affiant's review of the physical evidence, discussions with participating agencies, and interviews of persons who have personal knowledge of the events described herein.

## INTRODUCTION AND AGENT BACKGROUND

8.   Your affiant is a Special Agent with the United States Department of Justice, Drug Enforcement Administration ("DEA") and has been employed with the DEA since June 2019. Your affiant is a criminal investigator for the United States within the meaning of Title 21, United States Code, Section 878, and therefore your affiant is empowered to conduct

investigations of, and make arrests for, the offenses enumerated in Title 21. Accordingly, your affiant is a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a seizure warrant.

9.  Your affiant began his career as a Special Agent with the DEA in October of 2019. Your affiant received sixteen weeks of training at the DEA Academy in Quantico, Virginia, where your affiant learned to identify various types of controlled substances by sight and odor; the way in which controlled substances are packaged, marketed, and consumed; drug testing; informant handling; evidence handling; search and seizure law; law involving conspiracy; and surveillance and investigation techniques.

10.  Prior to your affiant's employment with the DEA, your affiant was employed by the North Little Rock, Arkansas, Police Department since 2007. During your affiant's employment with the North Little Rock Police Department, your affiant was assigned to the DEA Little Rock District Office as a Task Force Officer (TFO) from June 2014 until June 2019. Prior to your affiant's assignment as a DEA TFO, your affiant was assigned to the North Little Rock Police Department's Narcotics Unit from December 2009 until June 2014. Your affiant has been involved in numerous aspects of drug investigations, including, but not limited to, conducting controlled purchases of narcotics; utilizing confidential sources; debriefing defendants, witnesses, and informants; conducting surveillance and undercover operations; preparing and executing search warrants; analyzing documentary and physical evidence, analyzing phone toll records; and conducting wiretap investigations.

11.  In the course of your affiant's career, your affiant has been the affiant of, and/or participated in, numerous search warrants involving the law enforcement seizure of controlled

substances, documents associated with the sale of controlled substances and proceeds from the sale of illicit drugs.

12. Your affiant has personally conducted and/or assisted in over 200 investigations of criminal violations involving violations of the Federal Controlled Substances Act (Title 21, U.S.C. 841(a)(1) et. al.).

**PROBABLE CAUSE**

13. The United States, including the DEA, is conducting a criminal investigation into a Drug Trafficking Organization (DTO) based in the Western District of Arkansas (WDAR), and elsewhere. The DTO cell in Arkansas receives illegal drug shipments from California and elsewhere. This DTO is known to your Affiant to sell methamphetamine, heroin, fentanyl powder, "fake" Oxycontin pills laced with fentanyl, cocaine and marijuana.

14. This investigation has revealed two (2) Hispanic males based in the WDAR who act as drug distributors for this DTO (hereinafter referred to as Target Subject #1 and Target Subject #2). (*Affiant's NOTE: Your Affiant knows that drug traffickers commonly use aliases or fake names when involved in illegal activity.*)

15. Your Affiant knows that Target Subject #1 has been an active DTO member in Arkansas since approximately May 2022.

16. Your Affiant knows that Target Subject #2 has been an active DTO member in Arkansas since approximately early November 2022.

17. During the course of this investigation, your Affiant, along with other assisting law enforcement have conducted numerous physical surveillances of DTO members, including Target Subject #1 and Target Subject #2. These surveillances ultimately revealed a trailer-style residence in a rural part of Bentonville, Arkansas (Target Residence #1 – 12935 Huber Road,

Bentonville, Arkansas), that only a select few DTO members, including Target Subject #1 and Target Subject #2 would frequent on a daily and/or weekly basis. These surveillances and other investigative techniques have shown that this residence is not regularly occupied by anyone. Specifically, no one involved with this investigation has ever observed a vehicle remain at Target Residence #1 overnight.

18. Your Affiant knows that this DTO has also utilized Target Residence #1 in the past to receive parcels laden with illegal drugs. Your Affiant knows that Target Subject #1 and Target Subject #2 share control and access of Target Residence #1.

19. Your Affiant has observed Target Subject #1 and Target Subject #2 access Target Residence #1 on several occasions since each of their arrivals to Arkansas as DTO members. There have also been multiple occasions where your Affiant has observed Target Subject #1 and Target Subject #2 accessing Target Residence #1 multiple times per week. Your Affiant knows that Target Subject #1 and Target Subject #2 currently reside in apartments located in Springdale, Arkansas, and have so since each of their arrivals to Arkansas.

20. Based on the rural location of Target Residence #1, physical surveillance has proven extremely difficult. The majority of the surveillances of Target Residence #1 referenced throughout this affidavit have been conducted through the use of a covertly installed pole-camera positioned near Target Residence #1. Your Affiant and other cooperating law enforcement have documented daily activity logs from the surveillances observed from the pole-camera, as well as, maintained recorded footage captured from this pole-camera as evidence. Unless otherwise mentioned, all references to surveillances conducted of Target Residence #1 were observed through the use of the aforementioned pole-camera.

## SEIZURE OF UPS PARCEL DESTINED FOR TARGET RESIDENCE #1

21. On November 26, 2022, your Affiant was contacted by United Parcel Service (UPS) Security Supervisor Tony Anderson regarding an inbound parcel addressed to Target Residence #1. Your Affiant had previously requested a "flag" be established for all inbound UPS parcels to Target Residence #1. UPS Supervisor Tony Anderson informed your Affiant that this parcel had been shipped from California. Your Affiant requested for this parcel to be held for further investigation.

22. On November 28, 2022, your Affiant observed Target Subject #1's silver colored Nissan Altima, and Target Subject #2's blue colored Kia Forte arrive to Target Residence #1. Your Affiant observed Target Subject #1 and Target Subject #2 exit their vehicles and enter Target Residence #1, via the front door.

23. On November 28, 2022, your Affiant observed Target Subject #1 and Target Subject #2 exit Target Residence #1, via the front door. Both subjects entered their vehicles and departed the area.

24. On November 29, 2022, the Honorable Christy Comstock, United States Magistrate Judge, Western District of Arkansas, signed a search and seizure warrant (WDAR Case No.: 5:22CM68) authorizing law enforcement to search a United Parcel Service (UPS) parcel (tracking number 1ZA9830W4424094639) and seize any drug-related evidence. This parcel was addressed to Target Residence #1, and was shipped from California.

25. On November 29, 2022, agents searched this parcel and seized approximately 2,319 gross grams of methamphetamine concealed within a small safe. The methamphetamine seized from this parcel field-tested positive for the presence of methamphetamine, using a methamphetamine test-kit.

26. In the days and weeks prior to and after this incident, your Affiant continued to observe Target Subject #1 and Target Subject #2 frequently access Target Residence #1 in the same manner as previously described throughout this affidavit.

## SURVEILLANCE CONDUCTED ON FEBRUARY 2, 2023

27. On February 2, 2023, at approximately 9:30 a.m., your Affiant, along with other assisting law enforcement established surveillance of Target Subject #1 and Target Subject #2's apartments in Springdale, Arkansas. SA Matt Barden Jr., observed Target Subject #1 and Target Subject #2's vehicle parked in close proximity to each other's. (*Affiant's NOTE: Target Subject #1 and Target Subject #2 both reside in the same apartment complex in Springdale, Arkansas.*)

28. On February 2, 2023, at approximately 10:27 a.m., your Affiant observed Target Subject #1 exit the front door of his apartment residence. SA Matt Barden Jr., observed Target Subject #1 walk to his vehicle carrying a white plastic bag. Target Subject #1 then walked back into his residence.

29. On February 2, 2023, at approximately 10:30 a.m., SA Matt Barden Jr., observed Target Subject #2's vehicle back out of its parking spot and depart the area. (*Affiant's NOTE: Agents did not see where Target Subject #2 walked to his vehicle from, or if he had been in his vehicle the entire time.*)

30. On February 2, 2023, at approximately 10:36 a.m., SA Matt Barden Jr., observed Target Subject #1 walking back to and entering his vehicle. Target Subject #1 departed the area.

31. On February 2, 2023, at approximately 12:26 p.m., your Affiant observed Target Subject #2's vehicle arrive at Target Residence #1. Immediately after, your Affiant observed whom appeared to be Target Subject #2 exit this vehicle. At approximately 12:29 p.m., your

affiant observed whom appeared to be Target Subject #2 enter Target Residence #1, via the font door.

32. On February 2, 2023, at approximately 12:30 p.m., your Affiant observed Target Subject #1's vehicle arrive to Target Residence #1. Immediately after, your Affiant observed Target Subject #1 exit his vehicle and remain in the curtilage of Target Residence #1, where remained for approximately three minutes. At approximately 12:33 p.m., your Affiant observed Target Subject #1 enter Target Residence #1 via the front door.

33. On February 2, 2023, at approximately 1:51 p.m., your Affiant observed Target Subject #1 and Target Subject #2 exit Target Residence #1 via the front door. Target Subject #1 was carrying a black and clear bundle underneath his arm. Both subjects entered into their respective vehicles.

34. On February 2, 2023, at approximately 1:53 p.m., your Affiant observed Target Subject #2 depart Target Residence #1 driving his vehicle. Target Subject #1 remained outside of Target Residence #1.

35. On February 2, 2023, at approximately 4:37 p.m., Target Subject #1 departed Target Residence #1, driving his vehicle. (*Affiant's NOTE: Between 1:53 p.m., and 4:37 p.m., Target Subject #1 was observed in his vehicle, outside of his vehicle, and walking around Target Residence #1.*)

36. Your Affiant and other agents followed Target Subject #1 as he departed Target Residence #1. Agents ultimately followed Target Subject #1 to a retail store located at 202 S. Promenade, Rogers, Arkansas, arriving at approximately 5:55 p.m. Target Subject #1 parked in a parking spot and remained inside his vehicle.

37. On February 2, 2023, at approximately 6:05 p.m., your Affiant observed a red pickup truck arrive at this location and park near Target Subject #1's vehicle. Your Affiant observed the driver of the red pickup enter into the front passenger seat of Target Subject #1's vehicle and close the door. Approximately 1 minute later, the driver of the red pickup exited Target Subject #1's vehicle and entered back into the red pickup truck. A short time later, your Affiant observed the red pickup truck depart the area. The red pickup truck was followed directly to a fast food restaurant directly across W. Walnut Street from the retail store at 202 S. Promenade. SA Matt Barden Jr., observed the driver of the red pickup enter into the fast food restaurant. After a short time, the driver of the red pickup exited the restaurant, entered back into his vehicle, and departed the area. Agents continued to follow the red pickup as it merged onto Interstate 49 southbound.

38. On February 2, 2023, at approximately 7:13 p.m., Arkansas State Police (ASP) K-9 Corporal Matt Price initiated a stop for a traffic violation on the red pickup truck at the direction of your Affiant. This traffic stop occurred on Interstate 49 southbound, near mile marker 37, in the Fayetteville Division of the Western District of Arkansas.

39. During a probable cause search, Corporal Price located two (2) rubber containers containing suspected powdered fentanyl, multiple syringes, and packaging material. The driver and sole-occupant of the red pickup truck was arrested and transported to the Crawford County, Arkansas, Sheriff's Office. (*Affiant's NOTE: The suspected fentanyl was not field-tested due to the safety issues related to the handling of fentanyl.*)

40. On February 2, 2023, your Affiant and SA Andy Chronister met with and interviewed the arrestee (hereinafter, referred to as Cooperating Defendant (CD)), at the Crawford County Sheriff's Office. This interview was recorded via an audio recording device.

The CD's statement was corroborated by the previous surveillance done in the investigation of Target Residence #1, and Target Subjects #1 & #2; therefore, I believe the information provided by the CD to be true, accurate and reliable.

41. After your Affiant advised the CD of his Miranda Rights, the CD agreed to speak with your Affiant and SA Andy Chronister. The CD admitted that the fentanyl seized by ASP Corporal Price belonged to him. The CD admitted to purchasing the powdered fentanyl from an unknown Hispanic male distributor, in the parking lot of a retail business located at 202 S. Promenade, Rogers, Arkansas. The CD stated this drug transaction occurred inside of the distributor's vehicle. The CD admitted that immediately after this transaction, he travelled to the fast food restaurant to use the restroom. The CD also admitted to using some of the purchased fentanyl while inside of his red pickup, parked at the fast food restaurant.

42. The CD stated he has been purchasing methamphetamine, powdered fentanyl, and "fake" Oxycontin pills laced with fentanyl from distributors within this DTO in Northwest Arkansas for approximately one (1) year. The CD identified Target Subject #1 and Target Subject #2 as drug distributors from photographs shown to him by your Affiant. The CD admitted to making several purchases of illegal drugs from Target Subject #1 in the past. The CD also admitted to making purchases of illegal drugs from Target Subject #2 in the past.

## CONCLUSION

43. Based on the above information, your affiant has reason to believe that concealed within the Target Residence #1, which is further described in Attachment A, are items that constitute evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1) (distribution and possession with intent to distribute a controlled substance), and Title 21, United States Code, Section 846 (conspiracy to commit controlled substance

offense). I further believe that a search of this premise will result in the discovery of items that constitute evidence, fruits, and instrumentalities of these activities, specifically, the items listed in Attachment B.

Respectfully submitted,

*M. Brooks*

Michael Brooks
DEA Special Agent

Subscribed and sworn to before me on February 7, 2023

*Mark E. Ford*

HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE